The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. As aforementioned, all stipulations contained in the Pre-Trial Agreement and the Supplemental Pre-Trial Agreement are received into evidence.
2. Subsequent to the hearing the parties submitted stipulated medical and personnel records that have been marked as exhibit stipulated 1. These documents were received into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a fifty-six year-old female with a seventh grade education. Plaintiff has no other job skills or job training other than textile work. Plaintiff had been employed with the defendant-employers for approximately seventeen years.
2. Plaintiff began smoking when she was fourteen years old and stopped when she was approximately forty-four years old. Plaintiff smoked a pack a day.
3. Plaintiff had asthma as a child but she had no problem with exerting herself.
4. Plaintiff went to work in the textile industry at the age of seventeen. Plaintiff first worked for Kimberly Mills for approximately three to four years in the winding department. While employed with Kimberly Mills, Plaintiff worked with one hundred percent cotton. There was a lot of dust. The dust would get all over plaintiff's head. Plaintiff would clean her machine with a little brush three or four times daily. Dust was blown down once a day. Plaintiff's work area was very dusty during this process. Plaintiff worked eight hours a day while employed with Kimberly Mills.
5. After her employment with Kimberly Yarns, plaintiff became employed with Acme Mill. Plaintiff worked in the winding and twisting department. Plaintiff's work environment was real dusty. Plaintiff worked with one hundred percent cotton. Plaintiff cleaned with a brush twice a day for approximately fifteen to twenty minutes. Dust was blown down a few times while plaintiff was employed with Acme. Plaintiff worked six days a week.
6. Following her employment with Acme Mill, plaintiff began to work for Superior Yarns, a division of the defendant-employer Ti-Caro. Plaintiff worked for Superior Yarns from 1976-1993. Plaintiff's original job was in the winding department. The winding department was adjacent to the cardroom. A slide door remained open between the cardroom and the winding department. While employed with Superior Yarns, plaintiff worked with one hundred percent cotton. Cotton dust was visible in the air. At least twice a week dust was blown off the equipment. The dust was so thick it appeared to be like a snowstorm. Periodically, a sweeper would come around and sweep the floor where dust had accumulated.
7. In 1985, plaintiff was transferred to the warping department. Plaintiff worked in the warping area for several years. Plaintiff's breathing problems became worse after being transferred to the warping department. Plaintiff was exposed to cotton dust in the warping department. The amount of dust in the warping department was similar to the amount of dust that was in the winding department where plaintiff had previously worked. The dust level in the warping department required the process of blowing off.
8. In September 1992, plaintiff was transferred to the Rex Plant where plaintiff was not exposed to any cotton dust.
9. When dust level studies were conducted at Superior Yarns, plaintiff was instructed to spray around the area to keep the dust down. Employees were not allowed to blow down while the dust meters were utilized to measure dust levels. Tape was placed over the dust meters limiting the amount of dust that could be collected by this instrument.
10. About six to seven years after working for Superior Yarn, plaintiff began to experience breathing problems. These breathing problems included coughing, spitting up brown colored sputum, and tightness in the chest. These breathing problems were initially worse inside the mill than outside the mill.
11. Prior to working for Superior Yarn, plaintiff did not experience any breathing problems aside from the asthma that she had as a child.
12. Plaintiff's period of employment in the winding room from 1983 to 1985 augmented plaintiff's chronic pulmonary disease process.
13. Plaintiff's period of employment in the warping department beginning in 1985 augmented plaintiff's chronic pulmonary disease process. Plaintiff worked in the warping department after October 1, 1986.
14. The condition sustained by plaintiff is chronic pulmonary disease with a significant contribution from her cotton dust exposure in her workplace.
15. Plaintiff was in a risk area for the development of chronic obstructive pulmonary disease. Cotton textile workers are more likely to develop chronic obstructive pulmonary disease to which the general public is not equally exposed.
16. As a result of plaintiff's chronic pulmonary disease, plaintiff has been unable to work since she retired in 1993.
17. It would be futile for plaintiff to attempt to look for work given her age, medical condition, educational background and work experience.
18. As a result of plaintiff's chronic pulmonary disease, plaintiff is permanently and totally disabled.
19. As a result of her chronic pulmonary disease, plaintiff will need continued medication including bronchodilators, immunizations against influenza and pneumococcal pneumonia, and steroids for the rest of her life.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's employment in the textile industry during the period of time that she worked with pure cotton fibers exposed plaintiff to a greater risk of contracting chronic obstructive pulmonary disease than a member of the general public. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff's occupational exposure to cotton dust did significantly contribute (was a causal factor) to the development of her chronic obstructive pulmonary disease. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff has contracted an occupational disease which is due to causes and conditions which are characteristic of, and peculiar to, the textile industry in which she worked. N.C. Gen. Stat. § 97-53(13).
4. Plaintiff's last injurious exposure was after October 1, 1986 with defendant-employer Dixie Yarns. Dixie Yarns is liable for the injuries sustained by the plaintiff as a result of having contracted chronic obstructive pulmonary disease, an occupational disease. N.C. Gen. Stat. § 97-57.
5. Plaintiff is entitled to permanent and total disability compensation at a rate of $ 179.45 per week beginning on the day she retired in 1993 and continuing for the rest of her life. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have defendant-employer Dixie Yarns provide all medical treatment arising from this occupational disease to the extent that it tends or tended to effect a cure, give relief and/or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. The defendant-employer Dixie Yarns shall pay permanent and total disability compensation at a rate of $ 179.45 per week for the time period beginning from the day plaintiff retired in 1993 and continuing for the rest of her life, or until further order of the Commission The portion of this award that has accrued up to the filing of this Opinion shall be paid in a lump sum subject to the attorney's fee approved below.
2. The defendant-employer Dixie Yarns shall pay all medical expenses incurred or to be incurred as a result of her chronic pulmonary disease when bills for same have been submitted and approved by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
4. The defendants shall jointly pay an expert witness fee in the amount of $ 260.00 to Dr. Landis.
5. Defendant-employer Dixie Yarns shall pay the costs.
FOR THE FULL COMMISSION
 S/ _____________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/mj 6/12/96